# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUTIERREZ-RUBIO, et al., ) | |
| Petitioners, ) | |
| v. ) | Civil Action Nos. 15-6406, 6404, 6403 |
| DEPARTMENT OF HOMELAND ) | **RESPONDENTS' BRIEF ON** |
| SECURITY, et al., ) | **JURISDICTION** |
| Respondents. ) | |
| FLORE-PICHINTE, et al., ) | |
| Petitioners, ) | |
| v. ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, et al., ) | |
| Respondents. ) | |
| ZELAYA ALBERTO, et al., ) | |
| Petitioners, ) | |
| v. ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, et al., ) | |
| Respondents. ) | |

/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Tel: (202) 307-4293 / Fax: (202) 305-7000
Erez.R.Reuveni@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION................................................................................................ 1

LEGAL BACKGROUND ................................................................. 6

FACTUAL BACKGROUND .............................................................. 8

ARGUMENT ........................................................................... 8

I.      This Court Lacks Jurisdiction Over the Petitions and the Stay Requests.................. 9

II.     The Limited Review Provisions of 8 U.S.C. §§ 1252(a)(2), (e)(2), and (e)(5) do not
        Violate the Suspension Clause ................................................................ 16

CONCLUSION .......................................................................... 34

CERTIFICATE OF SERVICE ............................................................. 35

1

# CASE LAW

2

3

*AILA v. Reno,*
   18 F. Supp. 2d 38 (D.D.C. 1998) .................................................................... 2, 11

4

5

*Alvarez-Mendez v. Stock,*
   941 F.2d 956 (9th Cir. 1991) ............................................................................. 23

6

*American-Arab Anti-Discrimination Comm. v. Ashcroft,*
   272 F. Supp. 2d 650 (E.D. Mich. 2003)............................................................. 12

7

8

*Barrera-Echavarria v. Rison,*
   44 F.3d 1441 (9th Cir. 1995) ............................................................................. 26

9

10

*Bonhometre v. Gonzales,*
   414 F.3d 442 (3d Cir. 2005)......................................................................... 28, 29

11

12

*Boitilier v. INS,*
   387 U.S. 118 (1967)…………………………………………………………….3

13

14

*Boumediene v. Bush,*
   553 U.S. 723 (2008)........................................................................................... 15

15

*Brumme v. INS,*
   275 F.3d 442 (5th Cir. 2001) ..................................................................... passim

16

*Carlson v. Landon,*
   342 U.S. 524, (1952).................................................................................. passim

17

18

19

*Chin Yow v. United States,*
   208 U.S. 8 (1908).............................................................................................. 27

20

21

*De La Torre-Flores v. Napolitano,*
   2012 U.S. Dist. LEXIS 104432, *16 n.9 (S.D. Cal. July 25, 2012) ........................ 16

22

23

*Demore v. Hyung Joon Kim,*
   538 U.S. 510 (2003)........................................................................................... 19

24

25

*Dimova v. Holder,*
   783 F.3d 30 (1st Cir. 2015) ................................................................................ 29

26

*Ex parte Chow Chok,*
   161 F. 627, 628-29 (N.D. N. Y.), aff'd, 163 F. 1021 (2d Cir. 1908) ........................ 29

27

28

*Fay v. Noia,*
   372 U.S. 391 (1963)........................................................................................... 20

*Fiallo v. Bell,*
    430 U.S. 787 (1977)...................................................................................... 6

*Garcia de Rincon v. Dep't of Homeland Sec.,*
    539 F.3d 1133 (9th Cir. 2014) ......................................................... passim

*Gegiow v. Uhl,*
    239 U.S. 3 (1915)...................................................................................... 27

*Gisbert v. U.S. Attorney General,*
    988 F.2d 1437 (5th Cir.1993) ....................................................... 23, 24, 25

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004).................................................................................. 20

*In re Matter of G---,*
    20 I. & N. Dec. 764 (BIA 1993) ............................................................. 29

*INS v. St. Cyr,*
    533 U.S. 289 (2001).................................................................... 15, 19, 28

*Jean v. Nelson,*
    727 F.2d 957 (11th Cir. 1984) ................................................................ 30

*Johnson v. Eisentrager,*
    339 U.S. 763 (1950).................................................................................. 25

*Kaora Yamataya v. Fisher,*
    189 U.S. 100 (1903).................................................................................. 25

*Khan v. Holder,*
    608 F.3d 325 (7th Cir. 2010) ............................................................. passim

*Khedri v. Sedlock,*
    2009 WL 3380681 (N.D. Ill. Oct. 20 2009) .................................... 11, 13

*Kleindienst v. Mandel,*
    408 U.S. 753 (1972)...................................................................................3

*Kwai Fun Wong v. I.N.S.,*
    373 F.3d 952 (9th Cir. 2004) .................................................................. 23

*Kwong Hai Chew v. Colding,*
    344 U.S. 590 (1953)....................................................................... 22, 25, 26

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Landon v. Plasencia,*
   459 U.S. 21 (1982) .......................................................................... 22, 24, 25

*Lorenzo v. Mukasey,*
   508 F.3d 1278 (10th Cir. 2007) .................................................................. 10

*Lynch v. Cannatella,*
   810 F.2d 1363 (5th Cir. 1987) ................................................................... 23

*M.S.P.C. v. U.S. Customs & Border Prot.,*
   60 F. Supp. 3d 1156 (D.N.M. 2014) ..................................................... passim

*Matter of Pierre,*
   14 I. & N. Dec. 467 (1973) ...................................................................... 29

*Mathews v. Diaz,*
   426 U.S. 67 (1976) .............................................................................. 23, 24

*Melendez de Segovia v. Johnson,*
   15-2019 (D.D.C. Nov. 19, 2015)...................................................passim

*Meng Li v. Eddy,*
   259 F.3d 1132 (9th Cir. 2001) ............................................................ passim

*Munaf v. Green,*
   553 U.S. 674 (2008) ............................................................................... 20

*Negusie v. Holder,*
   555 U.S. 511 (2009) ................................................................................ 5

*Nishimura Ekiu v. United States,*
   142 U.S. 651 (1892) ............................................................................... 27

*Omar v. McHugh,*
   646 F.3d 13 & n.5 (D.C. Cir. 2011) .......................................................... 20

*Pena v. Lynch,*
   2015 U.S. App. LEXIS 17069, --- F.3d --- (9th Cir. 2015) ......................... 3, 15, 30,

*Prost v. Anderson,*
   636 F.3d 578 (10th Cir. 2012) .................................................................. 28

*Sale v. Haitian Ctrs. Council,*
   509 U.S. 155 (1993)................................................................................ 25

iv

*Sandoval v. Reno,*
   166 F.3d 225 (3d Cir. 1999) ................................................................. 28

*Sevilla v. I.N.S.,*
   33 F. App'x 284 (9th Cir. 2002) ........................................................... 23

*Sewak v. I.N.S.,*
   900 F.2d 667 (3d Cir. 1990) ................................................................. 29

*Shaughnessy v. United States ex rel. Mezei,*
   345 U.S. 206 (1953) .............................................................................. 24

*Shunaula v. Holder,*
   732 F.3d 143 (2d Cir. 2013) ................................................................. 10

*Smith v. U.S. Customs and Border Prot.,*
   741 F.3d 1016 (9th Cir. 2014) ........................................................ passim

*United States v. Flores-Montano,*
   541 U.S. 149 (2004) .............................................................................. 3

*United States v. Gonzalez-Torres,*
   309 F.3d 594 (9th Cir. 2002) .......................................................... 28, 29

*United States ex rel. Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) .......................................................................... 3, 14

*United States v. Jung Ah Lung,*
   124 U.S. 621 (1888) .............................................................................. 27

*United States v. Martin-Plascencia,*
   532 F.2d 1316, 1317 (9th Cir. 1976) .................................................... 28

*United States v. Moya,*
   74 F.3d 1117 (11th Cir. 1996) .............................................................. 23

*United States v. Pacheco-Medina,*
   212 F.3d 1162, 1163-64 (9th Cir. 2000) .............................................. 29

*United States v. Verdugo-Urquidez,*
   494 U.S. 259 (1990) .............................................................................. 20

*United States v. Villanueva,*
   408 F.3d 193, 198 n.5 (5th Cir. 2005) .................................................. 29

*Vartelas v. Holder,*
  --U.S.--, 132 S. Ct. 1479 (2012) ......................................................... 21

*Vaupel v. Ortiz,*
  244 F. App'x 892 (10th Cir. 2007) ............................................... passim

*Wei Chen v. Napolitano,*
  2012 U.S. Dist. LEXIS 160525, *9 (S.D.N.Y. Nov. 8, 2012) ................. 14

*Wilson v. Zeithern,*
  265 F. Supp. 2d 628 (E.D. Va. 2003) ................................................... 23

*Zadvydas v. Davis,*
  533 U.S. 758 (2001) ................................................................... 22, 23

*Wong Yang Sung v. McGrath,*
  339 U.S. 49 (1950) ............................................................................ 25

**STATUTE LAW**

REAL ID Act of 2005,
  Pub. L. No. 109-13 ........................................................................... 17

8 U.S.C. § 1101(a)(13) ....................................................................... 21

8 U.S.C. § 1101(a)(13)(A) ................................................................... 22

8 U.S.C. § 1182(a)(7) ........................................................................... 6

8 U.S.C. § 1225 ........................................................................ 9, 20, 14

8 U.S.C. § 1225(b) ..................................................................... 1, 6, 18

8 U.S.C. § 1225(b)(1)(B) ................................................................. 2, 9

8 U.S.C. § 1225(b)(1)(A)(i) ................................................................. 6

8 U.S.C. § 1225(b)(1)(A)(ii) ............................................................... 7

8 U.S.C. § 1225(b)(1)(A)(iii) ............................................................... 6

8 U.S.C. § 1225(b)(1)(B) ..................................................................... 9

8 U.S.C. § 1225(b)(1)(B)(ii) ............................................................... 7

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ....................................................... 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8 U.S.C. § 1225(b)(1)(B)(v) ................................................................ 7

8 U.S.C. § 1225(b)(1)(C) ................................................................ 7

8 U.S.C. § 1229a .......................................................................... 7, 10

8 U.S.C. § 1231(a)(5) ..................................................................... 5

8 U.S.C. § 1252 ............................................................................. 12

8 U.S.C. § 1252(a) ......................................................................... 27

8 U.S.C. § 1252(a)(2)(A) ................................................................ 12

U.S.C. § 1252(a)(2)(A)(i) ............................................................... 12

U.S.C. § 1252(a)(2)(A)(ii) .............................................................. 12

U.S.C. § 1252(a)(2)(A)(iii) ............................................................. 12

U.S.C. § 1252(a)(2)(A)(iv) ............................................................. 12

8 U.S.C. § 1252(a)(2)(D) ................................................................ 29

8 U.S.C. § 1252(a)(5) ..................................................................... 29

8 U.S.C. § 1252(e) ......................................................................... 29

8 U.S.C. § 1252(e)(1)(A) ................................................................. 9

8 U.S.C. § 1252(e)(1)(D) ................................................................. 9

8 U.S.C. § 1252(e)(2)(A) ............................................................... 3, 9

8 U.S.C. § 1252(e)(2)(B) ................................................................. 9

8 U.S.C. § 1252(e)(2)(C) ................................................................. 9

8 U.S.C. § 1252(e)(3) ..................................................................... 11

8 U.S.C. § 1252(e)(5) ...................................................................... 2

8 U.S.C. § 1225(b)(1) ................................................................... 4, 12

8 U.S.C. § 1252(a)(1) ..................................................................... 22

8 U.S.C. § 1252(a)(2) ............................................................................................ 1, 20

8 U.S.C. § 1252(a)(2)(C) ............................................................................................ 17

28 U.S.C. § 2241 ............................................................................................ 17

## FEDERAL REGULATIONS

8 C.F.R. § 1003.42(c) ............................................................................................ 7

8 C.F.R. § 1003.42(f) ............................................................................................ 7

8 C.F.R. § 208.30(d) ............................................................................................ 7

8 C.F.R. § 241.8 ............................................................................................ 5

8 C.F.R. § 1003.42(a) ............................................................................................ 7

8 C.F.R. § 1003.42(b) ............................................................................................ 7

8 C.F.R. § 1003.42(c) ............................................................................................ 7

8 C.F.R. § 1003.42(d) ............................................................................................ 7

8 C.F.R. § 1003.42(a) ............................................................................................ 7

## FEDERAL REGISTER

69 Fed. Reg. 48877 ............................................................................................ 8

## MISCELLANEOUS

U.S. Const. art. I, § 9 ............................................................................................ 15

DHS Immigration Enforcement Actions: 2013 ...............................................................5

EOIR Statistic Yearbook ...........................................................................................9

H.R. Rep. No. 104-469 ........................................................................................4, 5

Memorandum from David Martin, INS General Counsel, to Michael L. Aytes, Ass't Comm'r, Office of Benefits (Feb. 19, 1997) ...........................................................................24

**INTRODUCTION**

Defendants respectfully submit this memorandum addressing the Court's jurisdiction to hear Petitioners' habeas petitions and requests for stays of removal.

Petitioners, Kelly Gutierrez-Rubio and G.J.S.G., her minor child, who are citizens and natives of Honduras, and Laura Lisseth Flore-Pichinte and E.S.U.F., her minor child, who are citizens and natives of El Salvador,[1] assert legal claims designed to prevent the Department of Homeland Security's (DHS) execution of their lawful expedited removal orders and threaten to significantly inhibit use of an essential authority to address illegal immigration at the United States' borders and ports of entry for those members of family units who presently being detained by Immigration and Customs Enforcement (ICE) in the Eastern District of Pennsylvania. Their claims have already been rejected by five courts of appeal and several district courts and should similarly be rejected by this Court.

Petitioners are aliens who were applicants for admission who, upon inspection by an immigration officer, became subject to expedited removal orders based on their inadmissibility under 8 U.S.C. § 1182(a)(7). *See* 8 U.S.C. § 1225(b). As required by statute and regulation, after indicating an intention to apply for asylum or expressing a fear of persecution, Petitioners were referred for and received a credible fear interview before an asylum officer. Petitioners received a determination of no credible fear from the asylum officer,[2] as well as upon review of that negative credible fear determination by an immigration judge (IJ). 8 U.S.C. §

---

[1] The undersigned understands that Judge Schiller will be participating in the hearing scheduled for Tuesday, December 8, 2015 as well. The case of *Zelaya Alberto v. DHS*, 15-cv-06404 (E.D. Pa. Dec. 2 2015) is pending before Judge Schiller. The aliens in that case, Karen Margarita Zelaya Alberto and S.E.A.Z., her minor son, are natives and citizens of El Salvador, and raise identical claims to those raised in the Rubio and Pichinte petitions.

[2] Notably, a negative credible fear finding before USCIS is a statistical rarity. *See* Ex. 2, Affidavit of John L. Lafferty, ¶ 8. This suggests that Plaintiffs are simply unable to articulate any credible basis for why they are eligible to remain in the United States, not that anything is wrong with that determination.

1225(b)(1)(B)(iii)(I) & (III). Alleging habeas jurisdiction and violations of the Immigration and Nationality Act (INA), the Due Process Clause of the Fifth Amendment, and the Suspension Clause of the Constitution, Petitioners ask this court to stay and vacate their expedited removal orders, claiming that they were deprived of statutory and constitutional rights to meaningfully apply for asylum, withholding of removal under the INA and protection under the regulations implementing the Convention against Torture ("CAT") relief. Rubio Petition at ¶¶ 20-61, Prayer for Relief; Pichinte Petition at ¶¶ 20-73, Prayer for Relief.

As explained below, *infra* at 9-16, pursuant to 8 U.S.C. §§ 1252(a)(2), (e)(2), and (e)(5) "no court has jurisdiction to review expedited removal orders" save for the narrow questions – not at issue or contested here – of whether petitioners are aliens; whether they were ordered removed on an expedited basis; and whether they can prove that they are either lawfully admitted permanent residents, or refugees or asylees whose status has not been terminated. *See, e.g.*, *Smith v. U.S. Customs and Border Prot.*, 741 F.3d 1016, 1021-22 (9th Cir. 2014). Under no set of circumstances can a court review "whether the alien is actually inadmissible or entitled to any relief from removal," 8 U.S.C. § 1252(e)(5), "inquire into whether section 1225(b)(1) was properly invoked," *Meng Li v. Eddy*, 259 F.3d 1132, 1134, *opinion vacated as moot*, 324 F.3d 1109 (9th Cir. 2003), or review the propriety of applying the expedited removal statute to "individual aliens, including the determination made under" 8 U.S.C. § 1225(b)(1)(B) concerning credible fear determinations. 8 U.S.C. § 1252(a)(2)(A)(iii).These provisions foreclose any review of the claims at issue in these cases.

Any suggestion that the jurisdiction-limiting provisions of the expedited removal statute violate the Suspension Clause is meritless. *See infra* at 16-34. Petitioners are aliens who were apprehended almost immediately after illegally entering the United States without inspection,

never having been admitted. The Supreme Court has long recognized the political branches' broad power of immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004). It has explained that the power to admit or exclude aliens is a sovereign prerogative vested in the political branches and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765-766 & n.6 (1972) (noting that "the Court's general reaffirmation of the political Branches' exclusive authority to admit or exclude aliens "have been legion"). Accordingly, the Supreme Court "without exception has sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindiest*, 408 U.S. at 766 (quoting *Boitilier v. INS*, 387 U.S. 118, 123 (1967))

Petitioners have no Suspension Clause rights or due process rights to vindicate in a habeas proceeding because aliens seeking admission who were not admitted into the United States, but instead apprehended at the border almost immediately after entering unlawfully do not have the same rights as a lawfully admitted aliens subject to removal proceedings after having entered the United States lawfully, or even an unlawful alien who has lived here for some period of time sufficient to create substantial voluntary ties to the United States. *See, e.g.*, *United States ex rel Mezei*, 345 U.S. 206 (1953); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1141 (9th Cir. 2014); *AILA v. Reno*, 18 F. Supp. 2d 38, 60 (D.D.C. 1998) (collecting cases). Thus, expedited removal cases involving non-admitted aliens and aliens apprehended shortly after illegal entry do "not implicate [Suspension Clause] issues." *See de Rincon*, 539 F.3d at 1141; *accord Rodriguez v. U.S. Customs & Border Prot.,* 2014 U.S. Dist. LEXIS 131872, *8-12 (W.D. La. Sept. 18, 2014); *M.S.P.C. v. U.S.*

*Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1165-76 (D.N.M. 2014);[3] *Melendez de Segovia v. Johnson*, 15-2019 (D.D.C. Nov. 19, 2015) (order denying temporary restraining order, attached as Ex. 1, adopting and applying reasoning of *M.S.P.C.* and *Rodriguez*).

Indeed, the Fifth, Seventh, and Ninth Circuits have held that the expedited removal provisions and the limited review provisions of 8 U.S.C. §§ 1225(b)(1), 1252(a)(2)(A) and 1252(e) do not violate the Suspension Clause. *Pena v. Lynch*, No. 12-72099, 2015 U.S. App. LEXIS 17069 at *9-10, --- F.3d --- (9th Cir. 2015); *Khan v. Holder*, 608 F.3d 325, 329-30 (7th Cir. 2010); *de Rincon*, 539 F.3d at 1141; *Brumme v. INS*, 275 F.3d 442, 447-48 (5th Cir. 2001). For non-admitted aliens like Petitioners, "[w]hatever the procedure authorized by Congress is, it is due process," and "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543-44 (1950). Given this absence of procedural due process rights with respect to applications for admission, there can be no Suspension Clause issue, as there is no due process right to vindicate in habeas proceedings. *See de Rincon*, 539 F.3d at 1141; *M.S.P.C.*, 60 F. Supp.3d at 1173-76; *cf. Carlson v. Landon*, 342 U.S. 524, 537, (1952) (holding that Congress can place exclusion decisions entirely within the discretion of executive officers, with only the process that Congress sees fit to authorize). Further, the limited habeas review permitted by 8 U.S.C. § 1252(e)(2) provides a sufficient judicial forum to adjudicate any statutory claims of non-admitted aliens vis-a-vis their admission. *See, e.g.*

---

[3] At the telephonic hearing on December 2, 2015, Petitioners suggested *M.S.P.C.* and *Rodriguez* lack any persuasive value because they have been vacated. The fact that the case was vacated in no way undermines its persuasive authority, given that the basis of *vacatur* was mootness, and not a change in law. *See, e.g., de Rincon*, 539 F.3d at 1141 (relying extensively on *Li v. Eddy*, 259 F.3d 1132 (9th Cir. 2001), a prior case addressing the due process rights of non-admitted aliens, notwithstanding the fact that it "was subsequently vacated on mootness grounds . . . because the case is analytically sound, and because it was vacated on grounds unrelated to its analysis of the constitutionality of the limitations on review of an expedited removal order"). Judge Lamberth certainly found no issue with relying on both cases. *Melendez*, Ex. 1 at 44-45.

*Pena*, 2015 U.S. App. LEXIS 17069, at *10.

The implications of the relief Petitioners seek are significant. They ask this Court to stay their removals, reconsider and vacate their expedited removal orders, and essentially conduct new credible fear interviews until they secure a favorable result. While this relief is captioned in terms of Petitioners only, the practical effect of ruling in Petitioners' favor could be extraordinary in scope. In reality, Petitioners ask this Court to discard the carefully crafted expedited removal regime, enshrined in statute, which expresses Congress's firm conviction that the Executive branch requires the discretion to expeditiously remove certain classes of aliens at or near the border who have no entitlement to enter the United States and who otherwise may abscond into the interior or consume limited enforcement resources.

Congress's intent in this regard is not in doubt. "The decision to adopt an 'expedited removal' system was prompted by Congress's finding that 'thousands of aliens arrive in the U.S. at airports each year without valid documents and attempt to illegally enter the U.S.'" *AILA*, 18 F. Supp. 2d at 41 (quoting H.R. Rep. No. 104-469, pt. 1, at 158 (1996)). As noted in the conference report for the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), expedited removal was viewed as one of several critical tools to deal with the "crisis at the land border, allowing hundreds of thousands of illegal aliens to cross each year, and contributing more than half of the 300,000 to 400,000 annual growth in the illegal alien population." H.R. Rep. No. 104-469, pt. 1, at 107. The tool was needed in part because "[t]housands of smuggled aliens arrive in the United States each year with no valid entry documents and declare asylum immediately upon arrival. Because of the lack of detention space and overcrowded immigration court dockets, many have been released into the general population. Not surprisingly, a majority of such aliens do not return for their hearings." *Id.* at

117. Likewise, "[d]ue to the huge backlog in asylum cases, and the inability of the INS to detain failed asylum applicants who are deportable from the United States, these aliens could reasonably expect that the filing of an asylum application would allow them to remain indefinitely in the United States," providing further incentive for illegal entry. *Id.* at 117-18. These Congressional findings demonstrate Congress's firm determination that the expedited removal system was necessary to combat the immigration crisis which existed in 1995 and to provide the Executive Branch the firm tool to address immigration going forward. Those determinations are entitled to the greatest deference, as "over no conceivable subject is the legislative power of Congress more complete than it is over the decision of Congress to admit or to exclude aliens." *Negusie v. Holder*, 555 U.S. 511, 546 n. 2 (2009).

In place of this system, Petitioners suggest a review process in which all unadmitted aliens, in this instance apprehended while seeking to enter unlawfully (which is itself a criminal act),[4] subject to expedited removal (193,032, or 44 percent of all removals during 2013,[5] *see* Immigration Enforcement Actions: 2013, at 1, 5, *available at* https://www.dhs.gov/sites/default/files/publications/ois_enforcement_ar_2013.pdf) can challenge those proceedings in federal district court, delaying their removal for months, if not years, and tying up enforcement and judicial resources.[6]

Indeed, in this District alone, in roughly a two week's span, aliens apprehended unlawfully entering between the ports of entry have filed *thirteen* habeas petitions challenging

---

[4] *See* 8 U.S.C. §§ 1325, 1326.

[5] The number may be even higher given that the Department of Homeland Security ("DHS") may also reinstate prior orders of removal, including expedited removal orders, should they encounter illegal re-entrants in the United States. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8.

[6] Notably, such review would provide asylum seekers apprehended at the border, including those entering unlawfully, far greater procedural rights than aliens who in fact have due process rights because they have been lawfully admitted to the United States and who apply for asylum within the United States.

their expedited removal orders and at least six separate emergency stay motions, all of which have been granted, significantly undermining the Executive's ability to effect Congress's will with respect to expedited removal in this District. *See Erazo Anduray v. DHS*, (E.D. Pa. Dec 3, 2015); *Matamoros v. DHS*, (E.D. Pa. Dec. 3, 2015); *Funes v. DHS* (E.D. Pa. Dec. 3, 2015); *Menjivar v. DHS*, (E.D. Pa. Dec. 3, 2015); *Huezo de Chicas v. DHS*, (E.D. Pa. Dec. 3, 2015); *Martinez v. DHS*, 15-6411 (E.D. Pa. Dec 3, 2015) (Jones, J.); *Carrasco Gomez v. DHS*, 15-6410 (E.D. Pa. Dec. 3, 2015) (Tucker, J.); *Gutierrez Rubio v. DHS*, 15-6406 (E.D. Pa. Dec 2 2015) (Savage, J.); *Flores-Pichinte v. DHS*, 15-6403 (E.D. Pa. Dec 2 2015) (Pappert, J.); *Zelaya Alberto v. DHS*, 15-cv-06404 (E.D. Pa. Dec. 2 2015) (Schiller, J.); *Ceron-Larios v. DHS*, 15-6370 (E.D. Pa. Nov. 30, 2015) (Restrepo, J.); *Quinteros v. Johnson*, 15-6279 (E.D. Pa. Nov. 23, 2015) (Schmehl, J.); *Castro v. DHS*, 15-6153 (E.D. Pa. Nov. 16 2015) (Diamond, J.). This possibility is precisely what Congress sought to avoid in enacting the expedited removal statute, *see AILA*, 18 F. Supp. 2d at 41; H.R. Rep. No. 104-469, pt. 1, at 107, 117-18, 158, and is contrary to the plain language of the statute. 8 U.S.C. § 1225.

It also bears noting a possible motive in the deluge of stay motions and habeas petitions suddenly pending in this district: all petitioners are women and children subject to the *Flores* settlement and a pair of recent orders applying that settlement agreement to accompanied children and their parents who illegally come to the United States as family units. *See Flores v. Lynch*, No. 85-4544 (C.D. Cal.), Order re: Plaintiffs Motion To Enforce Settlement Of Class Action And Defendants Motion To Amend Settlement Agreement (July 24, 2015), *modified by* Order re: Response To Order to Show Cause (Aug. 21, 2015), *appeal pending* No. 15-56434 (9th Cir.). The U.S. District Court for the Central District of California ruled in those recent orders— which are still pending appeal—that the *Flores* settlement applies nationwide to accompanied

children and their parents. The order effectively raises the threshold the Government must meet in order to detain accompanied children and their parents; restricts the duration of such detention; limits the types of detention facilities that may be used to house families (of which Berks, at which Petitioners are presently detained, is 1 of only 3 such facilities nationwide); and imposes a legal requirement on the Government to process all members of family units—including adults—as expeditiously as possible. Of course, when their valid removal orders are stayed, the direct effect is to necessarily extend the time required for the Government to process and remove family units, thus prolonging whatever expedition is possible. In other words, the recent rash of stay motions and habeas petitions from the family units here may prolong their processing and detention so as to create the appearance of conflict with the recent *Flores* district court orders in order to gain their release into the United States before being removed, which would also provide them the opportunity to abscond and never show up for their ultimate removal.[7]

In light of the jurisdictional bars to review, the absence of any Suspension Clause issue, and the deference due Congress and the Executive's determinations concerning admission to and exclusion from the United States, the Court should dismiss the Petitions.

## LEGAL BACKGROUND

Congress has plenary power to make policies and rules for the admission and exclusion

---

[7] The ongoing grant of stays of removal in this jurisdiction also places DHS in the position of either (1) keeping aliens who receive stays in detention for longer periods of time when they would otherwise have already been removed, which would prevent DHS from placing any newly arriving aliens into expedited removal because of a lack of detention space; or (2) releasing aliens who receive stays into the general public rather than removing them, which would only encourage further obstruction of removal efforts and would severely drain DHS's enforcement resources to later re-detain people it already had in custody. *See* EOIR Statistic Yearbook (hereinafter "Yearbook") at P3, *available at* http://www.justice.gov/eoir/statspub/fy13syb.pdf (noting increase from 24% to 33% of removal orders entered in absentia following release of aliens in detention on bond). Either of these outcomes is especially damaging to America's security at this moment in time, when we are currently experiencing a significant uptick in illegal immigration at our southern border. *See* Ex. 3, Declaration of Woody Lee, at ¶¶ 1-16.

of aliens. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Although prior to 1996, aliens could secure review of some elements of their removal orders in habeas corpus proceedings, *see, e.g.*, *M.S.P.C.*, 60 F. Supp. 3d at 1167, IIRIRA substantially amended the procedures under the INA regarding admissions to, and removal from, the United States of aliens arriving in the United States without proper documentation by streamlining methods for determining admissibility, and for effectuating removal from the United States. Under IIRIRA, if an arriving alien is inadmissible under 8 U.S.C. § 1182(a)(7) because he or she lacks proper documentation, an immigration officer may "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

The streamlined removal provision codified at 8 U.S.C. § 1225(b) is known as "expedited removal." The statute applies with equal force to arriving aliens and to illegal entrants within 100 miles of the border who cannot show that they have been physically present in the United States continuously for the fourteen-day period immediately preceding the date of their apprehension. 8 U.S.C. § 1225(b)(l)(A)(iii); 69 Fed. Reg. 48877, 48880 (Aug. 11, 2004). In such circumstances, the entrants have not developed the ties or property interests that a lawful permanent resident or even an illegal entrant residing here for a significant period may have developed. *See, e.g.*, *M.S.P.C.*, 60 F. Supp.3d at 1173-76; *Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *8, *11; *see also Melendez*, Ex. 1 at 44-45.

If an alien who is an applicant for admission who is otherwise inadmissible, and, as in these cases, is apprehended when unlawfully crossing the border, expresses a fear of persecution or torture, an immigration officer refers the alien for an interview by an asylum officer at the U.S. Citizenship and Immigration Services ("USCIS"). The asylum officer must interview the

alien and determine whether he or she has established a credible fear of persecution. 8 U.S.C. §

1225(b)(1)(B)(ii). A "credible fear" exists if there is a significant possibility, taking into account

the credibility of the statements made by the alien in support of his or her claim and such other

facts known to the officer, that the alien could establish eligibility for asylum. *See* 8 U.S.C. §

1225(b)(1)(B)(v). If the alien receives a negative credible fear determination, he may request a

*de novo* review by an immigration judge ("IJ"). 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R.

§ 1003.42(d). The review includes an opportunity for the alien to be heard and questioned by the

IJ, who also may take into evidence any relevant oral or written statement. *Id.*; 8 C.F.R. §

1003.42(c). The alien may consult with a person of his or her own choosing prior to the review. 8

C.F.R. §§ 1003.42(a), (b), (c). The IJ in his or her discretion may also allow the "consulted"

person to be present during the review.

   If either the asylum officer or the IJ determines that the alien has established a credible

fear of persecution or torture, expedited removal proceedings are terminated and the alien is

granted a full hearing in non-expedited removal proceedings under 8 U.S.C. § 1229a. *See* 8

C.F.R. § 208.30(d), (f)(2). If both the asylum officer and the IJ determine that credible fear has

not been established, the alien is removed from the United States. 8 U.S.C. §§ 1225(b)(1)(B)(iii).

Consistent with the statute, the alien is entitled to no further review of the "no credible fear"

determination, from either the Board of Immigration Appeals ("BIA") or federal courts. 8 U.S.C.

§§ 1225(b)(1)(C), 1252(a)(2)(A)(iii); 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review

of an adverse credible fear determination made by an immigration judge.").

## FACTUAL BACKGROUND

   Petitioners are natives and citizens of El Salvador and Honduras. According their

petitions, they entered the country illegally without inspection and were apprehended shortly

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

after their illegal entries. *See* Rubio Petition at ¶ 5, Prayer for Relief; Pichinte Petition at ¶ 5. Petitioners expressed a fear of returning to their native countries and were referred to USCIS for a credible fear interviews. Rubio Petition at ¶¶ 46-50, Prayer for Relief; Pichinte Petition at ¶¶ 57-62. After the interviews, the asylum officer made a negative credible fear determination in each case. Rubio Petition at ¶¶ 46-50, Prayer for Relief; Pichinte Petition at ¶¶ 57-62. An IJ reviewed and affirmed each determination. Rubio Petition at ¶¶ 46-50, Prayer for Relief; Pichinte Petition at ¶¶ 57-62.

## ARGUMENT

### I.    This Court Lacks Jurisdiction Over the Petitions and the Stay Requests

Petitioners' habeas petitions seek review and *vacatur* of their expedited removal orders. Rubio Petition, Prayer for Relief; Pichinte Petition, Prayer for Relief. Specifically, they allege that (1) Respondents incorrectly applied the credible fear review process because Petitioners' believe they satisfy the credible fear standard, Rubio Petition at ¶¶ 46-50, Prayer for Relief; Pichinte Petition at ¶¶ 57-62, and that (2) their alleged due process rights have been violated because they did not have a "meaningful opportunity to establish their claims" and USCIS and the IJ did not "provi[de] them with a reasoned explanation for their decisions." Rubio Petition at ¶¶ 57-61, Prayer for Relief; Pichinte Petition at ¶¶ 64-68. As relief they ask this Court to (a) declare their expedited removal orders invalid, (b) order Respondents to vacate the expedited removal orders at issue, and (c) order Respondents to provide Petitioners with a new credible fear hearing. *Id.* at Prayer for Relief. However, as at least five separate Courts of Appeals of have unambiguously held, 8 U.S.C. §§ 1225(b) and 1252(a) and (e) preclude federal courts from reviewing expedited removal orders or granting any of the relief Petitioners request.

The plain language of the INA restricts judicial review of expedited removal orders and

credible fear determinations made under Section 1225(b). Section 1252(a)(2)(A) provides, in

pertinent part, that notwithstanding any other provision of law, including any habeas provision,

no court shall have jurisdiction to review:

> (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 235(b)(1) [8 U.S.C. § 1225(b)],

> (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

> (iii) the application of such section to individual aliens, including the determination made under section 235(b)(1)(B) [8 U.S.C. § 1225(b)(1)(B), concerning credible fear determinations].

> (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 235(b)(1) [8 USCS § 1225(b)(1)].

Section 1252(e)(2) in turn permits review of only three issues: "(A) whether the

petitioner is an alien; (B) whether the petitioner was ordered removed under [the expedited

removal statute, 8 U.S.C. § 1225], and (C) whether the petitioner can prove by a preponderance

of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been

admitted as a refugee . . . , or has been granted asylum[.]"  8 U.S.C. § 1252(e)(2)(A)-(C). Courts

lack jurisdiction to consider any collateral challenge to an expedited removal order beyond these

three permissible bases for review. *See, e.g., de Rincon.*, 539 F.3d at 1141. Moreover, the statute

specifically provides that "no court may--(A) enter declaratory, injunctive, or other equitable

relief in any action pertaining to an order to exclude an alien in accordance with section [8

U.S.C. § 1225(b)(1)] except as" established by 8 U.S.C. § 1252(e)(1)(D), 8 U.S.C. §

1252(e)(1)(A), which in turn states that "the court may order no remedy or relief other than to

require that the petitioner be provided a hearing in accordance with section 240 [8 U.S.C. §

1229a],'' should the alien satisfy one of the three permissible bases for review.

Section 1252(e)(5) defines the scope of the inquiry in 8 U.S.C. § 1252(e)(2)(B), stating that "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner." The statute unambiguously states that "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal," in habeas, or otherwise.[8] *See* 8 U.S.C. § 1252(e)(5); *Brumme*, 275 F.3d at 447-48 (rejecting claim that § 1252(e) permits habeas review of whether § 1225(b)(1) was applicable to petitioner); *Li*, 259 F.3d at 1134 ("Were there any doubt of congressional intent, it is resolved by [§ 1252(e)(5)], that expressly declares that judicial review does not extend to actual admissibility.").

Thus, "[b]y the clear operation of these statutes," federal courts "are jurisdictionally barred" from hearing direct challenges to expedited removal orders. *de Rincon*, 539 F.3d at 1139. Every circuit court to address this issue has so concluded. *See Smith*, 741 F.3d at 1021-22; *Shunaula v. Holder*, 732 F.3d 143, 147 (2d Cir. 2013); *Khan v. Holder*, 608 F.3d 325, 329-30 (7th Cir. 2010); *de Rincon*, 539 F.3d at 1139; *Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 (10th Cir. 2007); *Vaupel v. Ortiz*, 244 F. App'x 892, 894 (10th Cir. 2007); *Brumme*, 275 F.3d at 447-48; *Li*, 259 F.3d at 1134.[9]

Moreover, every circuit to specifically address the issue has concluded that courts may not review whether the statute was properly invoked, but only whether it was invoked at all. *See*

---

[8] To the extent that Petitioners argue that section 1252(e) should be construed as to avoid a constitutional question—i.e., the applicability of the Suspension Clause—canon of constitutional avoidance may be applied only when a statute is "susceptible to more than one construction" because it provides "a means of choosing between" multiple constructions. *Clark v. Martinez*, 543 U.S. 371, 385 (2005). As the weight of authority indicates, the unequivocal terms of section 1252(e) leave no ambiguity as to Congressional intent, thus foreclosing a plausible alternative reading. *See, e.g., Li*, 259 F.3d at 1134.

[9] Petitioners appear to acknowledge this by burying citation to these cases with a "but see" in a footnote. *See* Rubio Stay Memo at 17; Pichinte Stay Memo at 20.

*Shunaula*, 732 F.3d at 147 (court lacks "jurisdiction to inquire whether the expedited removal procedure to which [plaintiffs] were subjected was properly invoked"); *Khan*, 608 F.3d at 330 (same); *Vaupel*, 244 F. App'x at 894 (no review of whether "statute was lawfully applied to the alien"); *Brumme*, 275 F.3d at 447-48 (no review of whether statute "was applicable in the first place"); *Li*, 259 F.3d at 1134 (section 1252(e) "does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but only whether it was invoked at all."); *accord Al Khedri v. Sedlock*, No. 09 C 6483, 2009 WL 3380681, *2 (N.D. Ill. Oct. 20 2009) (holding that INA does not permit review of "whether the expedited removal process was lawfully applied to a particular alien.").

Given this overwhelming weight of authority, the Court should similarly hold that it lacks jurisdiction to address Petitioners' claims. The relief Petitioners seek – vacatur of their expedited removal orders, an order requiring a new credible fear interview, and a declaration that Respondents' implementation of the credible fear process in their case is contrary to law such that their expedited removal orders are invalid – is simply not cognizable in federal court.[10] *See* 8 U.S.C. §§ 1252(a)(2)(a)(i)-(iii), (e)(2), (e)(5).

Nevertheless, Petitioners argue that the Court must somehow retain jurisdiction because they "should have prevailed in establishing a credible fear." Rubio Petition at ¶¶ 68; Pichinte Petition at ¶ 56. Focusing exclusively on language in section 1252(e)(5), they claim the INA only precludes review of whether Petitioners are "actually inadmissible" or "entitled to relief from

---

[10] Separately, the District Court for the District of Columbia has exclusive jurisdiction to review claims generally attacking the legality of the credible fear regulations in the expedited removal context. *See, e.g., de Rincon*, 539 F3d at 1141 n.5 (noting separate statutory sub-section at 8 U.S.C. § 1252(e)(3) that allows a "systemic" challenge to the expedited removal process and its implementing regulations, but only in the United States District Court for the District of Columbia, and that the regulations were sustained against such a challenge in *AILA v. Reno*, 18 F. Supp. 2d 38, 54-56 (D.D.C. 1998)). Thus, to the extent Plaintiffs challenge the expedited removal system generally, rather than their individual expedited removal orders and credible fear determinations, they must file suit in the District of Columbia.

removal." Rubio Stay Memo at 16-17; Pichinte Stay Memo at 18-19. As they see it, the

foregoing review provisions in fact permit a court to review and vacate an expedited removal

order because they claim they did "not receive a fair credible fear interview and that they should

have passed their credible fear screening," which in their view is different than whether they are

inadmissible are entitled to relief from removal. *Id.* This appears to be an argument that

notwithstanding the jurisdictional stripping provisions of the INA, the court retains jurisdiction

to review the asylum officer and the IJ's credible fear determinations in order to ascertain

whether an expedited removal order should have been issued at all. That is, Petitioners

essentially argue that the Court must retain jurisdiction to review the *merits* of USCIS's and the

IJ's determinations that Petitioners did not establish a credible fear of persecution or torture and

the immigration officer's conclusion that they are otherwise inadmissible and subject to

expedited removal.

This claim is misguided. First, it ignores the rest of 8 U.S.C. § 1252, which explicitly

forecloses review of whether Petitioners should have passed their credible fear screening or the

application of the expedited removal statute to any individual alien. *See* 8 U.S.C. §

1252(a)(2)(A)(i-iv). Second, it ignores the clear import of section 1252(e)(5), which is "to clarify

that Congress really did mean what it said in the first sentence [of section 1252(e)(5)] — review

should only be for whether an immigration officer  issued [an expedited removal order] and

whether the Petitioner is the same person referred to in that order." *M.S.P.C.*, 60 F. Supp. 3d at

1164.

Third, Petitioners fail to acknowledge the weight of authority indicating that their claim

in fact requires reviewing precisely what 8 U.S.C. § 1252(a)(2)(A) precludes – the application of

the expedited removal procedures to a specific alien, the decision to invoke such procedures, the

credible fear determination, or any cause or claim arising from or relating to the implementation or operation of an expedited order of removal.[11] 8 U.S.C. § 1252(a)(2)(A); *accord Smith*, 741 F.3d at 1020-22 (no jurisdiction to review CBP's classification of alien as intending immigrant lacking entry documents); *see Li*, 259 F.3d at 1132 (no jurisdiction to review CBP's determination that alien's facially valid visa was invalid); *Khan*, 608 F.3d at 327, 330 (same); *AILA*, 18 F. Supp. 2d at 56-57 (same).

Petitioners also claim that *Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016 (9th Cir. 2014) supports them, as it "found that it had jurisdiction to decide whether the noncitizen was properly in the expedited removal system at all." Rubio Stay Memo at 16-17; Pichinte Stay Memo at 19. As the two courts to address this argument previously have observed, this is a misreading of *Smith*. *See M.S.P.C.*, 60 F. Supp. 3d at 1164; *Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *7-8.

In *Smith*, the petitioner argued that as a non-intending immigrant of Canadian citizenship, he was not subject to the documentary requirements to which any other visitor to the United States is subject. 741 F.3d at 1019. In particular, Smith claimed "that the CBP unlawfully applied the statute to him, on the grounds that documentary requirements for entry into the United States are waived for Canadians, and that the CBP violated his due process rights in issuing the expedited removal order." *Id*.

Rejecting this argument, the Ninth Circuit pointed out that Smith had conceded that he was an alien and that he was not a lawful permanent resident, or an alien who already had been

---

[11] One district court decision has read section 1252(e)(2) & (5) to permit narrow review. *See American-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 662-63 (E.D. Mich. 2003). However, that holding is at odds with the statute, and has been expressly rejected by subsequent court decisions. *See Vaupel*, 244 F. App'x  at 895; *Wei Chen v. Napolitano*, 2012 U.S. Dist. LEXIS 160525, *9 (S.D.N.Y. Nov. 8, 2012) (similar); *Al Khedri*, 2009 U.S. Dist. LEXIS 96856 at *5.

determined to be an asylee or refugee. The Court focused on the second category of permissible review: "whether the petitioner was removed under the expedited removal statute." Id. at 1021. The Court construed Smith's argument as follows:

> Smith's argument, in effect, is that he was a Canadian to whom the documentary requirements for admission did not apply, and that since he was exempt from the requirements, the CBP exceeded its authority. In other words, Smith argues that he was not "ordered removed under [8 U.S.C. § 1225]" because the CBP could not lawfully remove him under that statute.

Id. at 1022.

Contrary to Petitioners' reliance on Smith, the Ninth Circuit did not review whether Smith belonged in expedited removal. Instead, the Court "[a]ccept[ed] his theory at face value," but, nevertheless, concluded that Smith "cannot prevail because he was in fact removed under § 1225." The Court reviewed the relevant law applicable to aliens seeking admission and noted that it was entirely within CBP's discretion to determine for itself whether it believed Smith was an intending immigrant or a non-intending immigrant not subject to documentary requirements. Id. Because CBP determined that he was an intending immigrant, that was the end of the inquiry. "Smith was 'ordered removed,' under § 1225"; therefore, the Court lacked jurisdiction to inquire further. Id. at 1022. The Ninth Circuit expressly rejected the similar claim Petitioners advance here, that there must be jurisdiction to review the Government's discretionary determination that Smith was properly subject to an expedited removal order. As the Court noted, "[w]e do not evaluate the merits of the CBP's decision to classify Smith as an intending immigrant" because 8 U.S.C. § 1252(e)(5) bars judicial review of "whether the alien is actually inadmissible or entitled to any relief from removal."[12] Id.

---

[12] Indeed, as discussed infra, the Court also rejected the very due process claim Petitioners raise here, holding that any claim that "the procedures at issue here violate the Due Process Clause are foreclosed by United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950))." Smith, 741 F.3d at 1022.

Accordingly, courts lack jurisdiction to determine whether the expedited removal statute should not have applied in the first place, as such review is inextricably intertwined with review of the merits of USCIS's and the IJ's conclusions regarding credible fear and CBP's conclusions concerning Petitioners' inadmissibility finding. Because Petitioners raise none of the permissible bases for review in their petitions, they fail to state any claim for relief under section 1252(e)(2). Consequently this Court lacks jurisdiction over their claims.

## II.   The Limited Review Provisions of 8 U.S.C. §§ 1252(a)(2), (e)(2), and (e)(5) do not Violate the Suspension Clause

Notwithstanding the foregoing, Petitioners contend that if the INA is read – as every circuit court to address the issue has read it – to foreclose their claims, the statute violates the Suspension Clause. Rubio Stay Memo at 18-21; Pichinte Stay Memo at 21-23. Although the jurisdictional analysis above is sufficient to dispose of the petitions, out of an abundance of caution, Respondents address the issue, noting initially that every court to specifically address this argument expressly or implicitly has rejected it.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Petitioners contend that even if section 1252(e)(2) forecloses review of their claims, they must be able to raise their legal claims concerning whether the expedited removal and credible fear process as applied to them violate due process in some forum. In support of this claim they primarily rely on *INS v. St. Cyr*, 533 U.S. 289 (2001) and *Boumediene v. Bush*, 553 U.S. 723 (2008). Rubio Stay Memo at 18-21; Pichinte Stay Memo at 21-23.

As an initial matter, several courts, including four circuit panel decisions have upheld the

expedited removal regime after the Supreme Court's *Boumediene* decision. *See, e.g.*, *Pena v. Lynch*, 2015 U.S. App. LEXIS 17069, --- F.3d --- (9th Cir. 2015) ("Because the jurisdiction-stripping provisions of the statute retain some avenues of judicial review, limited though they may be, Pena has not been unconstitutionally denied a judicial forum."); *Khan*, 608 F.3d at 329-30 (rejecting argument that statute must be read to permit review under a "'safety valve' established for substantial constitutional questions"); *de Rincon*, 539 F.3d at 1141 ("narrow habeas review of expedited removal orders does not raise the constitutional problems" alluded to in *St. Cyr*); *Brumme*, 275 F.3d at 447-48 (rejecting Suspension Clause claim alluded to in *St. Cyr*); *accord M.S.P.C.* 60 F. Supp. 3d at 1170-71 (rejecting this claim); *Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *8-12 (similar); *De La Torre-Flores v. Napolitano*, 11-2698, 2012 U.S. Dist. LEXIS 104432, *16 n.9 (S.D. Cal. July 25, 2012) (unpublished) (similar); *Melendez*, Ex. 1 at 44-45 (applying *M.S.P.C.*); *see also Li*, 259 F.3d at 1134-35 (stating, before *Boumediene*, but after *St. Cyr*, that "with respect to expedited removal orders, … the statute could not be much clearer in its intent to restrict habeas review"); *Vaupel*, 244 App'x. at 895 (holding, prior to *Boumediene* ,"[n]or is there an exception in § 1252(e) providing authority to review constitutional claims related to the application of § 1225(b)(1).").

Moreover, Petitioners' assertions concerning the holdings and applicability of *St. Cyr* and *Boumediene* – that, in Petitioners' words, "noncitizens have always had access to judicial review to challenge their deportation orders . . . and the [] absence of such review would violate the Suspension Clause," Rubio Stay Memo at 18; Pichinte Stay Memo at 21 – is not a correct interpretation of either case. Unlike the present case, the petitioner in *St. Cyr* was a lawful permanent resident lawfully admitted and physically present in the United States, who, after pleading guilty to selling a controlled substance, was ordered removed and subjected to physical

detention pending removal. 533 U.S. at 292-93, 304-05. At issue in *St. Cyr* was whether district courts retained habeas jurisdiction under then-applicable sections of the INA to review the legal question of whether INA section 212(c) abrogated any authority the Attorney General had "to waive deportation for aliens previously convicted of aggravated felonies." *Id*. at 297. The Government argued that portions of 8 U.S.C. §§ 1252(a)(1), (a)(2)(C), and (b)(9) as then codified, which concerned judicial review of non-expedited removal orders generally, and of removal orders against criminal aliens specifically, deprived the district court of habeas jurisdiction to decide that issue. *Id*. at 293-98.

The Court first reiterated "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *Id*. at 298. Examining sections 1252(a)(1), (a)(2)(C), and (b)(9) as then codified, the Court noted the lack of a plain statement, let alone any mention of habeas – in each of the provisions cited by the Government.[13] *Id*. at 310-14. The focus of those provisions, as the Court explained, was "judicial review" or "jurisdiction to review," as opposed to "habeas corpus." *Id*. at 310-11. Because "judicial review," or "jurisdiction to review," and "habeas corpus" have historically distinct meanings, the Government could not satisfy the plain statement rule. *Id*. at 310-14. Consequently, those provisions did not deprive the district court of jurisdiction under the general habeas statute, 28 U.S.C. § 2241.

The Ninth Circuit analyzed the applicability of *St. Cyr* in the expedited removal context in *Li*. 259 F.3d at 1133-36. Li, a native and citizen of China, sought entry to the United States via Anchorage, Alaska. *Id*. at 1133. Although she alleged that she presented a facially valid visa, the former Immigration and Naturalization Service ("INS") determined that she sought to enter the

---

[13] 8 U.S.C. §§ 1252(a)(2)(C) and (b)(9) have since been amended by the REAL ID act to expressly limit habeas review. *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

United States by engaging in fraud or misrepresentation, and issued an expedited removal order. *Id*. On appeal, Li argued that the court retained jurisdiction to determine whether the Government correctly invoked the expedited removal procedure and that Congress did not intend to circumscribe habeas jurisdiction. *See Li*, 259 F.3d at 1134.

The Ninth Circuit rejected both claims, observing that "subsection (e)(2) does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but only whether it was invoked at all." *Li*, 259 F.3d at 1134. Stating that "[w]ith respect to review of expedited removal orders, however, the statute could not be much clearer in its intent to restrict habeas review," the Court held that other than the permitted avenues for review under section 1252(e)(2), courts lacked jurisdiction to review the merits of an expedited order or the Government's application of the relevant statute in the first place. *Id*. at 1134-35.

The Court then expressly distinguished the expedited removal context from *St. Cyr*, observing that the "case does not implicate the jurisdictional issues that would be raised had [petitioner] been *lawfully admitted* to this country" as the plaintiff in *St. Cyr* was. *Id*. at 1135 (emphasis added). Although reserving the issue for another day, the Court opined that if petitioner was in fact a lawfully admitted alien the Court might have "jurisdiction to determine whether an individual in such a situation is lawfully ordered removed under" the expedited removal statute. *Id*. (citations omitted). As for aliens who have not been lawfully admitted to the United States, the Court held that such aliens are "clearly of the type of case for which expedited removal provisions of 8 U.S.C. § 1225(b) and the limited review provisions of section 1252(e)(2) were designed." *Id*. at 1136 (citing H.R.Rep. No. 104-518 (1995), U.S. CODE CONG. AND ADM. NEWS, at 924); *see also, Khan*, 608 F.3d at 329-30 (distinguishing *St. Cyr* in the expedited removal context); *de Rincon*, 539 F.3d at 1141 (same, citing *Li* favorably); *Brumme*,

21

275 F.3d at 447-48 (same). Thus, non-admitted aliens lack Suspension Clause rights in relation to their admission and the Suspension Clause is not implicated by applying section 1252(e)'s limited habeas review to petitioners. *See Li*, 259 F.3d at 1135-36; *accord Pena*, 2015 U.S. App. LEXIS 17069 at *9-10.

*Boumediene* is similarly inapposite, given its specific factual circumstances. In *Boumediene*, certain enemy combatants physically detained at the United States naval base at Guantánamo Bay, Cuba brought an action challenging their indefinite detention. 553 U.S. at 732. The Supreme Court concluded that Boumediene and his fellow petitioners were under *de facto* United States' jurisdiction while at Guantánamo Bay, and therefore could challenge their physical detention through a writ of habeas. 533 U.S. 758-71. In the specific context of aliens detained indefinitely in *de facto* U.S. sovereign territory, the Court concluded "that at least three factors are relevant in determining the reach of the Suspension Clause: (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Id*. at 766.

Petitioners' reliance on *Boumediene* is misplaced, as this argument confuses the physical detention issue in *Boumediene* with the denial of a credible fear finding that resulted in an expedited removal order at issue here. As the Supreme Court in *Boumediene* observed, "the privilege of habeas corpus entitles [a] *prisoner* to a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." 533 U.S. at 779 (emphasis added); *see also id*. at 745 (discussing the historical origins of the writ and noting that "[t]he Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the *jailer* to account") (emphasis added); *St. Cyr*, 533 U.S. at 305-06 ("The

writ of habeas corpus has always been available to review the legality of executive detention.").
Here, Petitioners are not challenging their detention, indefinite or otherwise, but rather their
classification as aliens who lacked a credible fear of persecution and the issuance of expedited
removal orders.

The fact that Petitioners. do not expressly challenge their detention renders their situation
different from the physical detention at issue in *Boumediene*.[14] In the physical detention context,
"the protections of due process and habeas corpus are inextricably intertwined" because a court
reviewing the propriety of executive detention must "ensure the minimum requirements of due
process are achieved." *See Omar v. McHugh*, 646 F.3d 13, *20 & n.5 (D.C. Cir. 2011) (citing
*Munaf v. Green*, 553 U.S. 674, 685-88 (2008)); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525-29 (2004)
(plurality opinion); *id*. at 555-58 (Scalia, J., dissenting); *Fay v. Noia*, 372 U.S. 391, 402 (1963)).
That is, for a detainee in federal custody who challenges that custody, habeas corpus is the
mechanism by which the detainee may challenge whether his detention complies with due
process. *See Hamdi*, 542 U.S. at 525-29; *Omar*, 546 F.3d at *20 n.5.

But in the context of non-admitted aliens detained at the border who challenge only the

---

[14] Even if they were challenging their detention, which is mandatory under 8 U.S.C.
1225(b)(1)(B)(iii)(IV),  it is undisputable that "[d]etention during removal proceedings is a
constitutionally permissible part of that process," *Demore v. Kim*, 538 U.S. 510, 533 (2003),
particularly here, where Petitioners have only been detained a short time pending execution of
their expedited removal. *See* 8 U.S.C. § 1225 (requiring mandatory detention pending a final
determination of credible fear of persecution and removability). In any event, even assuming that
*Boumediene* might apply to Petitioners, they have no viable Suspension Clause claim under
*Boumediene*. The court there held that the right of an alien under the *de facto* sovereignty of the
United States to potentially assert constitutional claims assuming the Suspension Clause applied
was based on "objective factors and practical concerns" rather than "formalism." 553 U.S. at
764. Accordingly, in determining the constitutional rights of aliens under the *de facto* or *de jure*
sovereignty of the United States, the Court applies a "functional approach" rather than a bright-
line rule. *Id*. Under this functional approach, aliens apprehended shortly after crossing the border
and who had no previous substantial ties with the United States do not have a "significant
voluntary connection" to claim a right to any due process beyond that prescribed by Congress.
*See id*.; *accord Verdugo-Urquidez*, 494 U.S. 259, 271.

statutory process provided them by Congress concerning their applications for admission to the United States, there are no due process minimums to achieve through habeas, as there is no federal custody to test for compliance with minimal due process. As the Supreme Court has long held, in those circumstances, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned" and "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Knauff*, 338 U.S. at 543-44; *see Carlson*, 342 U.S. at 537 ("The power to expel aliens is essentially a power of the political branches of government, which may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit."). That is, because unadmitted aliens lack due process rights regarding their admission beyond those provided by Congress, there is no due process right to vindicate through habeas. *See de Rincon*, 539 F.3d at 1141-42.

Ultimately, Petitioners reliance on *St. Cyr* and *Boumediene* fails because their argument assumes they retain some due process right to vindicate in a habeas proceeding. Petitioners appear to suggest that because they, in their words, "effected entry" into the United States, albeit illegally and without inspection at a port of entry, they are therefore "present in the United States and entitled to the protections of the Due Process Clause," and, thus, have more rights concerning their applications to remain in the United States than an arriving alien standing at the threshold of entry. Rubio Petition at ¶ 59; Gutierrez Petition at ¶ 71. In other words, notwithstanding the fact that Petitioners illegally entered the United States by purposefully avoiding a port of entry and inspection, or the fact that they were apprehended almost immediately after crossing the border illegally, they claim this illegal entry entitles them to

procedural due process rights that aliens who lawfully present themselves for inspection at the border lack.

This argument is misguided for a number of reasons. First, it is untenable considering Congress's intent when amending the INA through the IIRIRA. In 1996, Congress passed IIRIRA, 110 Stat. 3009, at *3009-546, which amended INA § 101(a)(13) to replace the term "entry" as previously used in the INA, which was defined as "any coming of an alien into the United States, from a foreign port or place," *see* 8 U.S.C. § 1101(a)(13) (1988 ed.); *Vartelas v. Holder*,  --U.S.--, 132 S. Ct. 1479, 1484 (2012), with the terms "admission" and "admitted," defined as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); IIRIRA, 110 Stat. 3009, at *3009-546. IIRIRA further amended INA § 212(a)(6)(A) to provide that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). These amendments demonstrate Congress's "inten[tion] to replace certain aspects of the current [as of 1996] 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." H.R. Rep. 104-469(1), at 225 (1996). Memorandum from David Martin, INS General Counsel, to Michael L. Aytes, Ass't Comm'r, Office of Benefits (Feb. 19, 1997) (discussing, inter alia, the amendment to section 101(a)(13) of the Act), reprinted in 74 Interpreter Releases, No. 11, Mar. 24, 1997, app. II at 516-22. "Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted," and not, whether the alien is physically present in the United States. *Id.*

Second, Petitioners' contention over-reads precedent suggesting entry, even illegal entry, (notwithstanding IIRIRA) converts the alien from one standing at the threshold, and therefore lacking any due process rights as to their admission, into a person subject to the full protections of the Fifth Amendment and no different than citizens. Although some Supreme Court cases suggest the mere fact of physical presence affords illegal entrants some due process rights, other Supreme Court cases reject this conception. *Compare Zadvydas*, 533 U.S. at 693 ("the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"), *with Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("once an alien *gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly*") (emphasis added); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597 (1953) ("The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien *lawfully enters and resides in this country* he becomes invested with the rights guaranteed by the Constitution to all people within our borders") (emphasis added); *see also Gisbert v. U.S. Attorney General,* 988 F.2d 1437, 1440 (5th Cir.1993), *amended in part,* 997 F.2d 1122 (recognizing prior to IIRIRA that "aliens subject to deportation generally are granted greater substantive rights than are excludable aliens").[15] But even the cases that suggest illegal entry provides some due process protection make clear that "the nature of that protection may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 693. As *Zadyvdas* itself noted, "we deal here [in *Zadvydas*] with aliens who were admitted to the United States but subsequently ordered removed," and that "aliens who have not yet gained initial admission to this country

---

[15] "[A]n arriving alien, is in the same position as those aliens termed 'excludable' before the permanent changes to IIRIRA took effect in 1997." *See, e.g., Sevilla v. I.N.S.,* 33 F. App'x 284, 286 (9th Cir. 2002).

would present a very different question."[16] *Id*. at 682.

*Zadvydas* follows from earlier Supreme Court decisions clarifying that Congress may treat aliens, even aliens within the United States, differently. For example, in *Mathews v. Diaz*, 426 U.S. 67 (1976) the Supreme Court explained that while the Fifth Amendment may apply to some aliens, it does not apply to all classes of aliens equally, and Congress may properly distinguish between classes of aliens:

> The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification. For a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country.

426 U.S. at 78-79.

Petitioners' failure to acknowledge this background law causes them to overlook the relevant constitutional issue: the Due Process Clause does not apply equally to all illegal aliens in the United States. *See Mathews*, 426 U.S. at 78. While "non-admitted aliens" physically present in the United States might retain some substantive due process rights, *see* footnote 10

---

[16] Mere entry into the United States does not afford an alien "the same liberty interest as admission." *Wilson v. Zeithern*, 265 F. Supp. 2d 628, 633 (E.D. Va. 2003). Rather, "the liberty interest of an alien present within the country only by virtue of illegal, surreptitious entry into the country is more attenuated than that of an alien who has entered the country through official channels and been granted legal permanent resident status." *Id.* For example, aliens within the interior and subject to the criminal justice system, illegally or not, may not be punished prior to an adjudication of guilt in conformance with due process of law, a Fifth and Sixth Amendment safeguard available to citizens and aliens alike. *See Alvarez-Mendez v. Stock*, 941 F.2d 956, 962 & n.6 (9th Cir. 1991). Such aliens may be entitled to Miranda warnings prior to custodial interrogations, *see, e.g., United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996), are protected from physical abuse or torture, *see, e.g., Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987), and in certain circumstances may invoke the equal protection clause. *See Kwai Fun Wong v. United States INS*, 373 F.3d 952, 972 (9th Cir. 2004). Indeed, even *Zadvydas*, which suggested illegal entrants may have some constitutional rights, made that observation in the narrow context of a substantive due process challenge to the legality of indefinite detention. 533 U.S. at 682.

*infra*, they do not retain the same level of procedural due process available to aliens who have been lawfully admitted or even those rights which may be enjoyed by those who have lived in the United States for some period of time and developed ties to the community. *See Landon*, 459 U.S. at 32; *Kwong*, 344 U.S. at 597 n.5. As the Supreme Court has explained "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo–Urquidez*, 494 U.S. 259, 271 (1990). For non-admitted aliens lacking such ties, such as those here who were apprehended almost immediately after their unlawful evasion of inspection at the border, the so-called "entry fiction" applies. That is, although aliens seeking admission into the United States who lack such connections "may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert*, 988 F.2d at 1440; *accord AILA*, 18 F. Supp. 2d at 59. The doctrine has been affirmed time and again by the Supreme Court. *See, e.g.*, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]n alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Sale v. Haitian Ctrs. Council,* 509 U.S. 155, 175 (1993) (discussing entry fiction).

The entry fiction applies to all non-admitted aliens, both at the border, and those like Petitioners who have made illegal entry and are apprehended shortly thereafter. Although an alien may be "physically present in the United States," absent actual lawful admission into the United States or proof of prolonged ties to the community, such an alien is "legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert*, 988 F.2d at 1440. Indeed, as early as 1903 the Supreme Court made the very distinction the

Government draws here, "[l]eav[ing] on one side the question whether an alien can rightfully invoke the due process clause of the Constitution *who has entered the country clandestinely*, *and who has been here for too brief a period to have become, in any real sense, a part of our population*, before his right to remain is disputed.," and contrasting that situation from one where the Government "arbitrarily [causes] an alien who has entered the country, *and has become subject in all respects to its jurisdiction, and a part of its population*, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States." *Kaoru Yamataya*, 189 U.S. at 100-01; *accord Wong Yang Sung*, 339 U.S. at 49-50 (describing earlier decision as stating that "an antecedent deportation statute must provide a hearing *at least for aliens who had not entered clandestinely and who had been here some time even if illegally*") (emphasis added); *accord Landon*, 459 U.S. at 32 (noting due process may increase "once an alien *gains admission to our country and begins to develop the ties* that go with permanent residence") (emphasis added); *Kwong Hai Chew*, 344 U.S. at 597 (stating that alien acquires greater due process rights once he "*lawfully enters and resides in this country*") (emphasis added); *cf. Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (describing sliding scale and distinguishing between unlawful presence, lawful presence, and lawful presence accompanied by other ties to the United States like "preliminary declaration of intention to become a citizen").

Accordingly, "for purposes of the constitutional right to due process, [Petitioners'] status is assimilated to that of an arriving alien." *M.S.P.C.*, 2014 U.S. Dist. LEXIS 164782 at *47 (collecting and analyzing Supreme Court precedent addressing when aliens are "assimilated" to the status of an arriving alien although technically within the jurisdiction of the United States); *accord Kwong Hai Chew*, 344 U.S. at 591-92, 598-99 (finding regulation permitting exclusion

without hearing constitutional by limiting reach of regulation to "entrant aliens and to those *assimilated* to their status") (emphasis added); *accord Mezei*, 345 U.S. 206, 214 (1953) (upholding 19-month detention of arriving alien who was lawful permanent resident (LPR) when he left the United States because "[i]n such circumstances we have no difficulty in holding respondent an entrant alien or assimilated to that status for constitutional purposes"); *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir. 1995) (describing *Mezei* as a case where the Supreme Court treated a returning lawful permanent resident as "an entrant alien or assimilated to that status for constitutional purposes"); *see also Melendez*, Ex. 1 at 44-45 (applying *M.S.P.C.*).[17]

---

[17] This proposition follows from the more general proposition that entry does not occur for purposes of an illegal reentry prosecution if an alien is apprehended shortly after entering illegally. *See United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002). As the Ninth Circuit has explained:

> Since 1908, federal courts have recognized that "entering" the United States requires more than mere physical presence within the country. *United States v. Pacheco-Medina*, 212 F.3d 1162, 1163-64 (9th Cir. 2000). To "enter," an alien must cross the United States border free from official restraint. *Id.* at 1164. An alien is under "official restraint" if, after crossing the border without authorization, he is "deprived of [his] liberty and prevented from going at large within the United States." *Id.* (quoting *Ex parte Chow Chok*, 161 F. 627, 628-29 (N.D.N. Y.), *aff'd*, 163 F. 1021 (2d Cir. 1908)). An alien does not have to be in the physical custody of the authorities to be officially restrained; rather, the concept of official restraint is interpreted broadly. *Ruiz-Lopez*, 234 F.3d at 448. "The restraint may take the form of surveillance, unbeknownst to the alien." *Id.* (quoting *Matter of Pierre*, 14 I. & N. Dec. 467 (1973)). When under surveillance, the alien "has still not made an entry despite having crossed the border with the intention of evading inspection, because he lacks the freedom to go at large and mix with the population." *Id.* On the other hand, if an alien is not discovered until some time after exercising his free will within the United States, he has entered free from official restraint. *United States v. Martin-Plascencia*, 532 F.2d 1316, 1317 (9th Cir. 1976).

*Id.* at 598; *accord Dimova v. Holder*, 783 F.3d 30, 40 (1st Cir. 2015) (same); *United States v. Villanueva*, 408 F.3d 193, 198 n.5 (5th Cir. 2005) (similar). This reasoning parallels the "assimilation" body of cases discussed *supra*, particularly, where, as here, Petitioners effectively sought out immigration officials in order to apply for asylum. *See*

Therefore, even assuming Petitioners crossed the border—albeit it illegally and without presenting themselves for inspection as required by law—they are entitled to no further procedural rights than those authorized by Congress for nonadmitted aliens. As noted, non-admitted aliens who are not challenging their detention, but only their expedited removal orders, lack any due process minimums to vindicate through habeas. *Knauff*, 338 U.S. at 543-44; *de Rincon*, 539 F.3d at 1141-42. Thus, in the non-admitted alien context, no Suspension Clause issue arises at all, as non-admitted arriving aliens lack Suspension Clause rights in relation to their admission. *See Li*, 259 F.3d at 1135-36. The limited review provided by 8 U.S.C. § 1252(a) and (e) is all the process Plaintiffs are due.[18] *Cf. Diaz Rodriguez*, U.S. Dist. LEXIS 131872 at *11 ("Significantly, although *de Rincon* and *Brumme* involved individuals stopped at the border, both of those individuals had significant ties to the United States. . . . The pertinent distinction, as described in *Li*, is whether the petitioner is a lawfully admitted alien. Diaz Rodriguez has not shown that he has been lawfully admitted, so the due process rights of a lawfully admitted citizen are not implicated here.").

Finally, Petitioners' citation to a parade of cases they suggest require the Court to

---

*In re Matter of G---*, 20 I. & N. Dec. 764, 772 (BIA 1993) (no entry if, among other things, there is "evidence suggesting that the applicant deliberately surrendered himself to the authorities for immigration processing, or that, once ashore, he sought them out, voluntarily awaited their arrival, or otherwise acted consistently with a desire to submit himself for immigration inspection.").

[18] Alternatively, the Court could rely on *M.S.P.C.*'s statement that "any rights the petitioner may have under the Suspension Clause are not violated in this case." 60 F. Supp. 3d at 1166; *accord Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *8, *11. This follows from a separate body of Supreme Court case law which, in a plurality, applies an "ascending scale" to the question of the due process of rights of recent arrivals, illegal or otherwise, to the United States. *See Eisentrager*, 339 U.S. at 770 (describing sliding scale and distinguishing between unlawful presence, lawful presence, and lawful presence accompanied by other ties to the United States like "preliminary declaration of intention to become a citizen"). Aliens entering the United States illegally without inspection, and apprehended almost immediately thereafter, by any sensible definition, are on the lowest end of this "ascending scale," such that *M.S.P.C.* is correct that any rights such aliens may have under the Suspension Clause are not violated in this context. *See also e.g.*, *Gonzalez-Torres*, 309 F.3d at 598.

exercise jurisdiction on Suspension Clause grounds misses the mark. Rubio Stay Memo at 19-21; Pichinte Stay Memo at 21-24. First, Petitioners rely on Supreme Court cases over 100 years old, like *United States v. Jung Ah Lung*, 124 U.S. 621 (1888); *Chin Yow v. United States*, 208 U.S. 8 (1908); *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892); *Gegiow v. Uhl*, 239 U.S. 3 (1915)). *See* Rubio Stay Memo at 19-21; Pichinte Stay Memo at 21-24. But these cases are cases where the court exercised habeas jurisdiction over aliens in *physical custody* or otherwise restrained for traditional habeas corpus purposes in an era where Congress permitted greater review for non-admitted aliens. As *M.S.P.C.* recognized in distinguishing these cases, they involve review of "whether the petitioner could be lawfully detained under the then-existing immigration statutes that only limited review within the Executive Branch of an inspection officer's decision 'touching the right of any alien to land, when adverse to such right.'" 60 F. Supp. 3d at 1171-72 (citing *Ekiu*, 142 U.S. at 662-63 & n.1). "[A]t that time, Congress had not in the immigration statute expressly removed jurisdiction to consider whether the officer acted in accordance with the statute," *id.* (citing *Ekiu*, 142 U.S. at 663-64), and "[t]here was thus nothing to show that Congress intended the process due such an arriving alien not to include the power of the courts to review whether   the congressionally prescribed process was followed."[19] *Id.* As the Supreme Court has since explained, "the power to expel aliens is essentially a power of the political branches of government, which may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or

---

[19] This readily distinguishes the Third Circuit case *Sandoval v. Reno,* 166 F.3d 225 (3d Cir. 1999) on which Petitioners may rely. That case, while addressing pre IIRIRA precedents, clearly acknowledges that *Ekiu* and progeny stand for the limited proposition that an alien has "the right to petition for a writ of habeas corpus *to challenge the legal basis of his or her detention* by the Executive Branch." *Id.* at 234. As the Third Circuit has separately acknowledged, the REAL ID Act did not change that. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) ("An alien challenging the legality of his detention still may petition for habeas corpus. See H.R. Conf. Rep. No. 109-72, at 175 (2005).").

permit."[20] *See Carlson*, 342 U.S. at 537; *accord M.S.P.C.*, 60 F. Supp. 3d at 1172 (recognizing and applying *Carlson*).

Second, Petitioners cite a number of more recent appellate decisions discussing the Suspension Clause generally in the context of *deportation* and *removal* cases. *See* Rubio Stay Memo at 18-19; Pichinte Stay Memo at 21-22. None of the string of appellate cases Plaintiffs cite involve *non-admitted* aliens in *exclusion* proceedings (pre-1996) or what are now *expedited removal* proceedings. Rather, they involve review of deportation or removal proceedings, primarily through the petition for review process required by 8 U.S.C. § 1252(a)(5). The analysis in these cases thus stems from the fact, to cite but one example, that aliens in *deportation*/*removal* proceedings have a "due process" right to a "fundamentally fair" proceeding. *See, e.g.*, *Sewak v. INS*, 900 F.2d 667, 672 (3d Cir. 1990) (stating uncontroversial proposition that "alien subjected to *deportation* proceedings is entitled to due process of law") (emphasis added). Moreover, post REAL ID, in such proceedings 8 U.S.C. § 1252(a)(2)(D) explicitly vests courts of appeal with jurisdiction to review constitutional claims or questions of law. And unlike deportation hearings that are reviewable on a petition for review, "[w]ith respect

---

[20] The logical conclusion of Petitioners' argument appears to be that the Suspension Clause is a one-way ratchet in that if Congress once permitted greater review, it can never permit less, notwithstanding its plenary authority over the issue. That is not the law. *See Prost v. Anderson*, 636 F.3d 578, 583 n.4 (10th Cir. 2012) ("such a reading would become 'a one-way ratchet that enshrines in the Constitution every grant of habeas jurisdiction' by Congress, meaning that Congress would unconstitutionally 'suspend' the writ 'whenever it eliminates any prior ground for the writ that it adopted,' a result that leaves Congress with little incentive to extend the availability of collateral relief") (quoting *St. Cyr*, 533 U.S. 289, 341-42 (2001) (Scalia, J., dissenting)); *M.S.P.C.*, 60 F. Supp. 3d at 1172 ("That Congress by statute once permitted greater judicial review and procedural rights to arriving aliens does not mean that the Suspension Clause prohibits Congress from providing arriving aliens fewer procedural protections, so long as the writ still lies to determine whether a sufficient ground of removal and detention appears"); *accord Mezei*, 345 U.S. at 212-15 (holding that entering alien detained on Ellis Island, while able to test validity of his exclusion by habeas corpus, did not have right to retry determination of Attorney General in courts, to have a hearing, or to have evidence disclosed to him upon which determination rested).

to review of expedited removal orders, however, the statute could not be much clearer in its intent to restrict habeas review." *Li*, 259 F.3d at 1134-35.

These distinctions are crucial, given the Supreme Court's repeated mandate that for non-admitted aliens not subject to deportation or removal proceedings, "[w]hatever the procedure authorized by Congress is, it is due process," and "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Knauff*, 338 U.S. at 543-44. In any event, following IIRIRA and REAL ID, all such review must occur in the Courts of Appeal. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); *Bonhometre*, 414 F.3d at 446. Under that same regime, exclusion proceedings, which are now expedited removal proceedings, are exclusively reviewable under the limited habeas review provisions of 8 U.S.C. § 1252(e) in district court. "Because the jurisdiction-stripping provisions of the statute retain some avenues of judicial review, limited though they may be, [Petitioners have] not been unconstitutionally denied a judicial forum." *Pena*, 2015 U.S. App. LEXIS 17069 at *10. That is precisely what *M.S.P.C.* and the similar case of *Rodriguez* in the Western District of Louisiana concluded, *see M.S.P.C.*, 60 F. Supp. 3d at 1173-76; *Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *8, *11; *accord Melendez*, Ex. 1 at 44-45, rebutting any suggestion by Petitioners that habeas cases preceding 1952 or recent suspension clause cases hold to the contrary.

Accordingly, as every court to squarely address the jurisdictional issue in this case has found, any Suspension Clause claim fails on the merits and must be dismissed.[21] *See M.S.P.C.*,

---

[21] To the extent Petitioners suggest that some independent due process right to apply for asylum or to remain in this country if they allege that they face persecution in their home countries, that claim is foreclosed by the entry doctrine. *See Jean v. Nelson*, 727 F.2d 957, 981-82, 984 (11th Cir. 1984) (en banc) (holding that inadmissible Haitians had "no constitutional rights with respect to their applications for admission, asylum, or parole"), *aff'd on other grounds*, 472 U.S. 846 (1985); *accord AILA*, 18 F. Supp. 2d at 59 (collecting cases).

60 F. Supp. 3d at 1173-76 ("[T]his Court cannot thwart Congressional intent and find jurisdiction under the Suspension Clause to second-guess in habeas the administrative decisions of the executive officers to exclude her. The substitute habeas procedures are sufficient to ensure the legality of Petitioner's exclusion, and thus the restrictions on habeas review do not offend Petitioner's rights under the Suspension Clause."); *Rodriguez*, 2014 U.S. Dist. LEXIS 131872 at *8, *11 (holding that "any rights the petitioner may have under the Suspension Clause are not violated in this case" and "the legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause"); *accord Pena*, 2015 U.S. App. LEXIS 17069 at *9-10; *Khan*, 608 F.3d at 329-30; *Brumme*, 275 F.3d at 447-48; *see also Li*, 259 F.3d at 1134-35; *Vaupel*, 244 F. Appx. at 895; *Melendez*, Ex. 1 at 44-45 (applying *M.S.P.C.* and *Rodriguez*).

## CONCLUSION

For the foregoing reasons, the Court should conclude that it lacks jurisdiction over Petitioners' claims and that the Suspension Clause is not implicated in this case

//

//

Dated:  December 3, 2015

Respectfully submitted

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation,
District Court Section

/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Tel:  (202) 307-4293
Fax:  (202) 305-7000
Erez.R.Reuveni@usdoj.gov

JOSEPH DARROW
Trial Attorney

*Counsel for Respondents*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
United States Department of Justice